**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVAN MILLER,

           Plaintiff,

    v.

SHEILA OLIVEIRA,

           Defendant.

_____/

No. C-13-0846 EMC

**ORDER (1) DISCHARGING ORDER TO SHOW CAUSE; AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Docket Nos. 3, 13, 21)**

       Plaintiff Evan Miller, proceeding pro se, initiated this lawsuit against Defendant Sheila Oliveira, who is also proceeding pro se. Currently pending before the Court is Mr. Miller's response to an order to show cause and Ms. Oliveira's motion to dismiss. Having considered the papers submitted, the Court hereby **DISCHARGES** the order to show cause and **GRANTS** the motion to dismiss.

**I.    DISCUSSION**

A.    Order to Show Cause

       Mr. Miller's primary claim against Ms. Oliveira is one for breach of contract. According to Mr. Miller, Ms. Oliveira entered into a property settlement agreement in which she agreed to pay a certain amount of money to Larry Vigil ($68,400) and that Mr. Vigil subsequently assigned those rights to Mr. Miller. In response, Ms. Oliveira filed a motion to dismiss in which she asserts that the agreement at issue had to do with spousal support obligations, that she completed those obligations, and that spousal support was terminated in July 2010 (by a state superior court in Alameda County). *See* Docket No. 3 (motion).

United States District Court

For the Northern District of California

Mr. Miller failed to file an opposition within the time frame provided for by the Civil Local Rules. *See* Civ. L.R. 7-3(a) (providing that an opposition to a motion "must be filed and served not more than 14 days after the motion was filed"). The Court thus issued an order to show cause, directing Mr. Miller to show cause why his case should not be dismissed without prejudice for failure to prosecute. Mr. Miller has now responded to that order.

In his response, Mr. Miller admits that he failed to file a timely opposition. He suggests, however, that his failure should be excused because, when the case was reassigned from Judge Laporte to this Court, the hearing date on the motion to dismiss was changed, which led him to believe that he had additional time to file his opposition. *See* Docket No. 16 (response). This excuse, however, rings hollow given that the Clerk's notice which alerted Mr. Miller to the change in hearing date expressly stated that the opposition brief was due on April 11, 2013. *See* Docket No. 10 (notice). Nevertheless, the Court shall not dismiss this case without prejudice based on the failure to file a timely opposition, particularly because, if it did, Mr. Miller would simply refile the same action (as the dismissal would be without prejudice). Accordingly, the Court shall discharge the order to show cause but with an express warning to Mr. Miller that a future failure to abide by rules, orders, and/or Clerk's notices could expose him to sanctions.

B.   Motion to Dismiss

Now that Mr. Miller has filed an opposition to Ms. Oliveira's motion, the Court turns to the merits of the motion.[1] No oral argument is necessary for the motion as it is suitable for disposition on the papers.

1.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

---

[1] After Mr. Miller filed his opposition to the motion to dismiss, Ms. Oliveira filed another brief which she titled "Brief to Support Motion to Dismiss with Prejudice." *See* Docket No. 21. The Court construes this document as Ms. Oliveira's reply brief.

**United States District Court**
For the Northern District of California

1    must take all allegations of material fact as true and construe them in the light most favorable to the

2    nonmoving party, although "conclusory allegations of law and unwarranted inferences are

3    insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

4    2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

5    facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when

6    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7    defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

8    *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

9    a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

10    unlawfully." *Iqbal*, 129 S. Ct. at 1949.

11        2.    <u>Evidence</u>

12        Where a 12(b)(6) motion is at issue, a court typically cannot consider evidence beyond the

13    four corners of the complaint. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (stating that,

14    "[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the

15    contents of the complaint"). A court, however, may still rely on a document to which the complaint

16    refers if the document is central to the party's claims and its authenticity is not in question. *See id.*

17    A court may also consider evidence subject to judicial notice. *See United States v. Ritchie*, 342 F.3d

18    903, 908-09 (9th Cir. 2003). The Ninth Circuit has explicitly held that a court may take judicial

19    notice of "'proceedings in other courts, both within and without the federal judicial system, if those

20    proceedings have a direct relation to matters at issue.'" *United States ex rel. Robinson Rancheria*

21    *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of a state

22    court judgment).

23        Given the above standards, the Court – in resolving the pending motion – takes into account

24    the following documents only: (1) Mr. Miller's complaint; (2) the July 22, 2009, order issued by the

25    Alameda County Superior Court, which approved the parties' spousal support agreement (attached

26    as Exhibit 1 to Mr. Vigil's opposition and Exhibit B to Ms. Oliveira's reply); and (3) the July 6,

27    2010, civil minutes of the Alameda County Superior Court, which terminated spousal support

28    (attached as Exhibit A to Ms. Oliveira's motion). The Court does not consider either Ms. Oliveira's

**United States District Court**
For the Northern District of California

1    declarations or Mr. Vigil's affidavit, except to the extent the Court makes certain assumptions, as

2    discussed below.

3           3.      *Rooker-Feldman* Doctrine

4           In his opposition, Mr. Miller does not dispute that the Alameda County Superior Court

5    terminated his spousal support in July 2010.  His main argument is that the spousal support was

6    improperly terminated for the following reasons:

7    (1)     because, under the California Family Code, "[a]n agreement for spousal support may not be

8            modified or revoked to the extent that a written agreement . . . specifically provides that the

9            spousal support is not subject to modification or termination," Cal. Fam. Code § 3591(c),

10           and, here, the parties' spousal support agreement had such a provision[2];

11   (2)     because the state court terminated spousal support based on the representation (presumably,

12           by Ms. Oliveira) that Mr. Vigil had committed "serious domestic violence" when in fact he

13           pled guilty to disturbing the peace only, Opp'n at 2; and

14   (3)     because Mr. Vigil was never given notice of hearing before the state court, which was the

15           only reason why he did not appear at the hearing and defend against the misstatements made

16           by Ms. Oliveira.

17   Mr. Miller takes the position that, for all of these reasons, the order of the Alameda County Superior

18   Court is void and, therefore, this Court may ignore that order.

19           For purposes of this order, Court assumes the truth of (1)-(3) above.  The problem for Mr.

20   Miller is that, even with these assumptions, the Court may not simply ignore the termination of

21   spousal support by the state court – especially as it appears that Mr. Miller and/or Mr. Vigil already

22   asked the state court "to correct its error" but declined.  Opp'n at 3.  Under the *Rooker-Feldman*

23   doctrine, where a "state-court loser[] complain[s] of injuries caused by [a] state-court judgment[]

24   rendered before the district court proceedings commenced and inviting district court review and

25   rejection of [that] judgment[]," the state-court loser's district court action should be dismissed for

---

27   ² Although Mr. Miller has provided a copy of the spousal support agreement, the last
     paragraph in Attachment A – which appears to contain language regarding modification – is largely
28   illegible.  Ms. Oliveira has provided a clearer copy of the agreement which indicates that "[s]pousal
     support may not be modified *upward*."  Reply, Ex. B (agreement) (emphasis added).

United States District Court

For the Northern District of California

1   want of subject matter jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

2   284 (2005). While the doctrine does not bar jurisdiction in a case where a plaintiff merely "'asserts

3   as a legal wrong an allegedly illegal act or omission by a third party,'" an action will still be

4   considered an impermissible de facto appeal of a state court decision where the plaintiff seeks relief

5   from the state court judgment *and* alleges a legal error by the state court. *See Bell v. City of Boise*,

6   709 F.3d 890, 898 (9th Cir. 2013). Here, Mr. Miller is implicitly seeking relief from the state

7   court's termination order; he has also made clear in his opposition that he is claiming error on the

8   part of the state court. *See* Opp'n at 3.

9       Accordingly, the *Rooker-Feldman* doctrine is a bar to Mr. Miller's suit – at least to the extent

10  Mr. Miller seeks relief based on spousal support owed from July 1, 2010, and on. The state court's

11  order provided that spousal support was "terminated effective 07/01/2010." Mot., Ex. A (minutes).

12  The order did not, at least on its face, purport to eliminate any obligations due prior to that date. *See*

13  *also* Cal. Fam. Code § 3591(b) (providing that a spousal support "agreement may not be modified or

14  terminated as to an amount that accrued before the date of the filing of the notice of motion or order

15  to show cause to modify or terminate").

16      Still, to the extent Mr. Miller makes a claim that Ms. Oliveira failed to make spousal support

17  payments prior to July 1, 2010, he runs into a different problem. Based on the spousal support

18  agreement offered by Mr. Miller, it appears that Ms. Oliveira was obligated to make a payment of

19  $1,200 each month, starting on August 1, 2009. *See* Opp'n, Ex. 1 (agreement attached to court

20  order). Because Ms. Oliveira's obligations were terminated by court order as of July 1, 2010, that

21  means that, at the time this lawsuit was filed, Ms. Oliveira had – at most – failed to pay Mr. Vigil

22  $13,200 (*i.e.*, $1,200 x 11 months). *See Wolde-Meskel v. Vocational Instruction Proj. Comm.*

23  *Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) (stating that "[s]atisfaction of the § 1332(a) diversity

24  requirements (amount in controversy and citizenship) is determined as of the date that suit is filed –

25  the 'time-of-filing' rule"). Even if Mr. Vigil was entitled to prejudgment interest on the $13,200,[3]

26  ———————————

27      [3] *But see* 12-57 Moore's Fed. Prac. – Civ. § 57.21[3][b][ii] (noting that "[t]he amount in
    controversy is generally determined exclusive of interest and costs" and that "[t]he phrase *interest*

28  *and costs* as used in the statute refers to those fees incurred or to be incurred in connection with the
    federal diversity action itself[;] [t]herefore, interest and costs may be included in the jurisdictional

**United States District Court**
For the Northern District of California

1  that would not put the amount in controversy anywhere near $75,000 at the time this lawsuit was

2  filed.  Under 28 U.S.C. § 1332, the amount in controversy must exceed $75,000 in order for

3  diversity jurisdiction to obtain.  *See* 28 U.S.C. § 1332; *cf.* 15-102 Moore's Fed. Prac. – Civ. §

4  102.104[3] (noting that, "[i]n general, dismissal of part of the case at an early stage, thereby

5  reducing the amount of recovery, does not necessarily destroy jurisdiction" but, "if the proofs

6  adduced at trial conclusively show that the plaintiff never had a claim even arguably within the

7  required range, a diversity action must be dismissed" because "[f]ailure to satisfy the jurisdictional

8  amount from the outset, although not recognized until later, is not a subsequent change that can be

9  ignored").  Although Ms. Oliveira did not move to dismiss on the basis of lack of subject matter

10 jurisdiction, this Court has a sua sponte obligation to evaluate its jurisdiction.  *See Nevada v. Bank of*

11 *Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (noting that "it is well established that 'a court may

12 raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the

13 action, even on appeal'").

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25

26 amount calculation when one party may be contractually obligated to pay them as part of the dispute
   underlying the action"); *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968) (noting that

27 "Congress limited federal jurisdiction to cases involving in excess of [at that time] $10,000.00,
   'exclusive of interest . . . ,' to prevent the delaying of a suit merely to accumulate the necessary

28 amount for federal jurisdiction").

**II.   CONCLUSION**

Accordingly, for the foregoing reasons, the order to show cause is discharged, but Ms. Oliveira's motion to dismiss is granted.  Mr. Miller's claim is barred in large part by the *Rooker-Feldman* doctrine.  To the extent the claim is not barred by the doctrine – *i.e.*, he asserts a claim for failure to make payments prior to July 1, 2010 – the Court lacks subject matter jurisdiction.

Finally, to the extent Ms. Oliveira has asked (as a part of her reply brief) that Mr. Miller be declared a vexatious litigant, that request is denied without prejudice.

The Clerk of the Court is directed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 3, 13, and 21.


IT IS SO ORDERED.


Dated:  May 14, 2013

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

7